## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| **TARSHA DONALDSON,**  Plaintiff,  v.  **GEORGIA POWER COMPANY**,  Defendant. | Civil Action No. 7:13-CV-67 (HL) |

### ORDER

Before the Court is the Motion for Summary Judgment (Doc. 14) by Defendant Georgia Power Company ("Georgia Power"). For the reasons stated below, the motion is granted.

**I.  Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## II.     Factual Summary

This case arises from the termination of Plaintiff Tarsha Donaldson ("Plaintiff") as a Georgia Power employee in late June 2012. On June 23, 2008, Richard McDonell ("McDonell") hired Plaintiff to work for Georgia Power as a building and ground attendant in Valdosta, Georgia. An African-American female, Plaintiff was Georgia Power's only building and ground attendant in Valdosta. Among other things, her job duties included delivering mail to all of Georgia Power's buildings in Valdosta, inspecting the first aid kits and fire extinguishers for all of the buildings on a monthly basis, cleaning the Georgia Power facility located at 200 Miller Street, and performing other tasks specially set by management. McDonell was Plaintiff's supervisor during the entire time she worked at Georgia Power. (Georgia Power's Statement of Undisputed Material Facts ("Georgia Power's SMF"), Doc. 14-2, ¶¶1-3; Plaintiff's Statement of Disputed Material Facts ("Plaintiff's SMF), Doc. 21, ¶44).

During the first two years Plaintiff worked at Georgia Power, she largely met performance expectations, although she became increasingly frustrated with the demands placed on her. (Deposition of Terri Lupo, Doc. 17, pp. 53-54). Georgia Power has a Workplace Ethics Department ("WPE") to which employees may submit complaints if they believe they are being treated unfairly, including experiencing discrimination or retaliation. On November 23, 2010, Plaintiff

complained to WPE that McDonell was requiring her to perform unreasonable tasks that were beyond her job description and that he told her to get on her hands and knees to use brake cleaner to remove scuff marks on the floor. After this complaint, Plaintiff and McDonell agreed to lessen some of the demands on Plaintiff and to apply a wax covering to the floor to make it easier to clean. (Georgia Power's SMF, ¶¶4-6). At some point in time, McDonell told Plaintiff that a woman was possibly not well-suited to being a building and ground attendant. (Deposition of Plaintiff, Doc. 18-3, pp. 382-83).

On May 20, 2011, in preparation for an audit, McDonell told Plaintiff to clean the 200 Miller Street building and complete work tasks on a checklist. Plaintiff left work that day before she had completed all of the tasks. McDonell tried contacting Plaintiff on her company-issued, two-way radio, but she did not respond. Plaintiff later told McDonell that she realized her radio was being alerted but that she "wasn't sure" it was McDonell who was trying to contact her. The supervisor did not believe this explanation.[1] (Georgia Power's SMF, ¶¶7-8).

On May 25, 2011, Plaintiff related new concerns to WPE concerning McDonell. She claimed that he had unfairly denied her application for short-term disability benefits and that he had unreasonable expectations for her work.

---

[1] Plaintiff denies this account but has not provided any evidence that would dispute it. This problem crops up several times in Plaintiff's responses to Georgia Power's statement of undisputed facts. Therefore, under Local Rule 56, these facts are deemed undisputed.

McDonell wanted her to focus on the upcoming audit of the 200 Miller Street facility and clean it five days a week instead of three days per week, including emptying all of the trashcans each day. Following an investigation into Plaintiff's complaints, WPE decided that McDonell had not been the person responsible for denying short-term disability benefits to Plaintiff and that he had not been unfair in his management of her work. (Id. at ¶¶9-11).

At some point during 2011, McDonell instructed Plaintiff to begin cleaning the bottom sections of doors by getting on her hands and knees. Plaintiff replied that this instruction was offensive and was treating her like a slave. Moreover, she insisted that she could adequately clean the doors by bending down. Nevertheless, McDonell persisted in requiring Plaintiff to clean the doors by getting on her hands and knees. (Id. at ¶12; Plaintiff Depo., pp. 67-68).

In September 2011, McDonell became concerned by Plaintiff's performance in cleaning the 200 Miller Street building. On September 2, he visited the building and saw trash on the floor. When asked about the dirty floor, Plaintiff said she could not remember the last time she had vacuumed it, and she agreed that the carpet looked poor. McDonell reminded Plaintiff that when the carpet was first installed he had told her to keep it clean so that it would last longer. The kitchen was also dirty, and McDonell discussed with Plaintiff the need to thoroughly clean it. Among other things, he told Plaintiff that the

microwave, refrigerator, cabinet doors, coffee accessory holders, and utensils needed to be properly cleaned. When inspecting the kitchen on September 12, McDonell noticed that several things he had told Plaintiff to clean were dirty, including the cabinet doors, microwave, and coffee accessory holder. He also had a coaching session with Plaintiff because she had gone home for a short time during the workday without letting him know. (Georgia Power's SMF, ¶¶15-21).

On February 21, 2012, McDonell met with Plaintiff to discuss his annual evaluation of her work for 2011. He rated her as "does not meet expectations" and identified several areas in which her work performance had been deficient, including failing to thoroughly clean the kitchen at the 200 Miller Street facility, not answering his call to her radio, and going home during the workday without telling him what she was doing. After Plaintiff left the meeting, she was taken in an ambulance to the hospital where she was treated for anxiety. She also filed a WPE complaint against McDonell relating to the annual evaluation, additionally alleging that he was treating her unfairly and micromanaging her work. Georgia Power approved Plaintiff to take leave under the Family Medical Leave Act ("FMLA") from February 21 to March 22, 2012, when her doctor released her to return to work. (Id. at ¶¶22-27).

On April 16, 2012, Plaintiff filed a charge of discrimination against Georgia Power with the Equal Employment Opportunity Commission ("EEOC"). She alleged that her employer had discriminated against her on the basis of her race and sex by subjecting her to a hostile work environment and giving her a negative performance evaluation on February 21, 2012. Plaintiff signed the charge under penalty of perjury, and in her charge she identified February 21 as both the earliest and latest date of discrimination. (Id. at ¶¶30-31). Sometime in June 2012, the Georgia Power employee who had been investigating Plaintiff's WPE complaints called to tell her that if she did not drop her EEOC charge then the WPE investigation would not be continued. (Plaintiff Depo., pp. 268-71).

On June 14, 2012, McDonell did a walk-through inspection of 200 Miller Street, the facility Plaintiff was responsible for cleaning. He noticed problems similar to what had been present before, including dirty bathroom floors, unclean kitchen utensils, and a dirty microwave. Plaintiff told him that she had not cleaned the stove or refrigerator. She said, "If you want detailed cleaning of the building, then I need some help a couple of days per week," or words to that effect. McDonell did not consider it reasonable or necessary to provide Plaintiff with help. After discussing the matter with his supervisor, McDonell decided to fire Plaintiff for poor work performance, and on June 25, 2012, he informed Plaintiff that her employment had been terminated. (Georgia Power's SMF, ¶¶32-39).

Plaintiff filed an amended EEOC charge on July 5, 2012. She charged that she had suffered race and sex discrimination, retaliation, and a hostile work environment, pointing specifically to the negative performance evaluation and her termination. Signing the amended charge under penalty of perjury, Plaintiff identified February 21, 2012 as the earliest date of discrimination and June 25, 2012 as the latest date of discrimination. (Id. at ¶¶40-41).

Plaintiff sued Georgia Power in this Court on May 15, 2013. She alleges that the company is liable for gender and race discrimination, a hostile work environment, and retaliation after she reported the discrimination and sought benefits under the FMLA.[2] According to Plaintiff, Georgia Power treated her less favorably than similarly-situated employees who were white and/or male, and McDonell's unreasonable work expectations and treatment of her constituted harassment. Plaintiff alleges that Georgia Power retaliated for her WPE complaints, EEOC charge, and request for FMLA leave by giving her a negative evaluation and terminating her employment. (Complaint, Doc. 1, ¶¶16-44).

## III. Legal Analysis

Georgia Power's motion for summary judgment is granted because the undisputed facts show that it is entitled to judgment as a matter of law on all of Plaintiff's claims.

---

[2] Plaintiff also initially alleged that Georgia Power interfered with her efforts to obtain benefits under the FMLA, but she has since dropped that claim. (See Plaintiff's Response to Georgia Power's Motion for Summary Judgment, Doc. 20, p. 3, n. 1).

### A. Race and Sex Discrimination Claims

Plaintiff has failed to establish a question of fact for whether she was treated worse than similarly-situated employees who were of a different race or sex than herself. For such a differentiated-treatment claim under Title VII, a plaintiff typically must show that she was treated less favorably than another employee who, apart from the race or sex of the employee, was in similar circumstances to herself. *See* Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1327-28 (11th Cir. 2011). In the absence of such a comparator, however, a plaintiff may still show race or sex discrimination if she "presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" Id. at 1328 (quoting Silverman v. Bd. of Educ., 637 F.3d 729, 733 (7th Cir. 2011)).

Plaintiff has not pointed to another employee at Georgia Power who could serve as a comparator, and she also ahs not produced circumstantial evidence suggesting race or sex discrimination. She states that McDonell's instruction for her to get on her hands and knees to clean a steel plate at the bottom of a door made her feel like a "slave." However, it was Plaintiff who used this descriptive term, not McDonell, and given that Plaintiff's job involved such cleaning and that McDonell was her supervisor, the Court fails to see how his cleaning directions

9

are evidence of race or sex discrimination.[3] As for McDonell's comment that perhaps a woman was not best-suited to being a building and ground attendant, the Court finds this to be insufficient to create a question of fact for whether he discriminated against Plaintiff because of her sex. There is no evidence for when this statement was made, so it has little, if any, probative value. The fact that McDonell knew Plaintiff was a woman when he decided to hire her further undercuts the argument that this comment, standing alone, shows he negatively evaluated her work and subsequently fired her because of her sex. *See* Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1443 (11th Cir. 1998).

Plaintiff also complains that McDonell treated her more rudely than he did other Georgia Power employees, some of whom were white males. He required Plaintiff to look for maintenance issues while she cleaned the Georgia Power facilities; whenever employees complained of how Plaintiff was cleaning or the lack of cleaning, he always sided with them over Plaintiff's protests; and whenever employees requested Plaintiff's assistance, he always told her to comply, regardless of how unreasonable the demands were. There are several reasons no reasonable jury would infer unlawful discrimination from these facts. First, McDonell was not the supervisor for the other employees, so it is unsurprising that he would interact differently with them than with Plaintiff. *See*

---

[3] The Court is also unconvinced by Plaintiff's suggestion that Georgia Power "set her up to fail" by imposing an unreasonable workload. Plaintiff bases this theory on nothing more than speculation.

Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 n. 5 (11th Cir. 2011) (noting that "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination"). Second, given that McDonell was ultimately responsible for Plaintiff's work performance, but not the other employees' work, the demands he placed on Plaintiff hardly rise to the level of Title VII violations. Plaintiff has provided evidence from which a jury could infer that she had a physically-demanding job with a difficult boss, but not that she suffered race or sex discrimination.

### B. Hostile Work Environment Claim

Plaintiff has also failed to establish a question of fact for whether she was subjected to a hostile work environment on the basis of her race or sex. A plaintiff making such a claim under Title VII must show that (1) she belongs to a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the plaintiff, such as her race or sex; (4) that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment…." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). With regard to the fourth element, a plaintiff must show that an

objective person would find the harassment to be sufficiently severe or pervasive to alter the terms and conditions of her employment. Id. at 1276.

Plaintiff has not produced evidence indicating that she experienced harassment because of her race or sex nor that the harassment was so severe or pervasive as to alter her working conditions at Georgia Power. The only examples of harassment cited by Plaintiff are McDonell's instructing her to get on her hands and knees to clean the door and his negative evaluation of her work performance. The Court is not persuaded that a reasonable person would perceive McDonell's conduct as sufficiently severe or pervasive as to create a hostile working environment. However, even if the behavior rose to the level of harassment, there is no evidence that McDonell treated Plaintiff in this manner because of her race or sex. Summary judgment is granted on the hostile working environment claim.

### C.  Retaliation Claims

The motion for summary judgment is also granted with regard to Plaintiff's retaliation claims. Plaintiff alleges that Georgia Power retaliated against her for making internal WPE complaints against McDonell, filing an EEOC complaint against the company, and taking FMLA leave. According to Plaintiff, Georgia Power retaliated by giving her a negative performance review and terminating her employment, in violation of Title VII and the FMLA. Where, as here, there is

no direct evidence of retaliation, a court must consider whether a plaintiff is able to make out a *prima facie* case of retaliation. Adams v. Cobb Cnty. Sch. Dist., 242 F. App'x 616, 620 (11th Cir. 2007). If the plaintiff is able to do so, then the burden shifts to the employer to proffer a legitimate reason for the adverse employment action. McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008). Once such a reason is provided, the plaintiff bears the burden of showing that the proferred explanation was merely a pretext for retaliation. Id. This same analysis applies regardless of whether the retaliation claim falls under Title VII or the FMLA. *See* Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001).

Plaintiff is unable to make out a *prima facie* case of retaliation. Establishing a *prima facie* case of retaliation requires a plaintiff to show that (1) she engaged in a statutorily-protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the activity and the employment action. *See* Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008) (analyzing a retaliation claim under Title VII); Strickland, 239 F.3d at 1207 (scrutinizing a FMLA retaliation claim). While a temporal proximity that is "very close" between the employee's protected activity or expression and the adverse employment action would be evidence of a causal connection, Penaloza v. Target Corp., 549 F. App'x 844, 847 (11th Cir. 2013), such temporal proximity

alone would be insufficient if the plaintiff provides no evidence that the decision maker responsible for the adverse action actually knew, when the action was taken, that the employee had engaged in a protected activity. *See* Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197-98 (11th Cir. 1997); *see also* Strickland, 239 F.3d at 1207-08.

Plaintiff has not made out a *prima facie* case of retaliation for her allegation that Georgia Power gave her a negative evaluation in retaliation for her WPE complaints against McDonell. Plaintiff has not produced any evidence showing a causal link between the WPE complaints and the performance evaluation. More than three months passed between the last WPE report Plaintiff had made before the evaluation and when McDonell evaluated Plaintiff on February 21, 2012. The Eleventh Circuit has held that, absent additional evidence, the passage of three months is too much time to establish causation through temporal proximity, Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007), so retaliation has not been shown with regard to the WPE complaints.[4]

Plaintiff has also failed to provide a *prima facie* retaliation case concerning her claim that her employment was terminated in retribution for her EEOC charge on April 16, 2012. There is no evidence for a causal connection between

---

[4] To the extent Plaintiff argues that she was fired in June 2012 in retaliation for her WPE complaint on February 21, 2012 about the performance evaluation, this contention also fails because her only evidence of causation is temporal proximity, and the time disparity is too great.

Plaintiff's EEOC charge and her termination in late June 2012. The Court doubts whether the charge was sufficiently close in time to Plaintiff's firing to indicate that one led to the other, but even assuming it was, there is no evidence that McDonell knew of the EEOC charge when he decided to fire Plaintiff.

Finally, there is no evidence that Georgia Power fired Plaintiff in retaliation for requesting FMLA leave. Plaintiff argues that there is evidence for causation in the temporal proximity between the request for leave and the termination. However, it is undisputed that Plaintiff requested FMLA leave approximately four months before she was fired. (Ex. 12 to Plaintiff Depo.). As noted above, the elapsing of three months lacks sufficient proximity to show causation, so Plaintiff's argument is meritless.

## IV. Conclusion

For the reasons stated above, Georgia Power's Motion for Summary Judgment (Doc. 14) is granted, and this case is dismissed with prejudice.

**SO ORDERED**, this the 16th day of December, 2014.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

scr